UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DAVID ZENG,                                              :

                      Plaintiff,                 :    26 Civ. _____

        - against -                              :    <u>COMPLAINT</u>

HH FAIRCHILD HOLDINGS, LLC, SAMUEL        :    <u>JURY TRIAL DEMANDED</u>
WILSON FAIRCHILD, and SAMUEL B.
FAIRCHILD,                                               :

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Plaintiff David Zeng ("Plaintiff" or "Zeng"), by his attorneys named below, for his complaint against Defendants HH Fairchild Holdings, LLC, Samuel Wilson Fairchild, and Samuel B. Fairchild (collectively "Defendants"), respectfully alleges:

### Jurisdiction

1. The jurisdiction of this Court over the within action rests upon 28 U.S.C. §1332(a)(1), in that there is complete diversity of citizenship between plaintiff and defendants, and the amount in controversy, without interest or costs, exceeds the sum or value specified by 28 U.S.C. §1332(a), all as more fully appears below.

### Nature of the Action

2. This is an action to recover damages for breach of contract, breach of implied contract, quantum meruit, unjust enrichment, and promissory estoppel, arising from the joint efforts of Plaintiff and Defendants to negotiate and close transactions related to the procurement, sale, and distribution of personal protective equipment (PPE) to the City of New York and other New York and U.S.-based entities during the COVID Pandemic and the breach

of an agreement between Plaintiff and Defendants to split the profits realized from these transactions, such that Plaintiff would receive a fifty-percent share.

## Parties

3.    Plaintiff DAVID ZENG is a citizen of the United States who has lived in New Mexico and New York and is currently a citizen of the state of Utah.

4.    Defendant HH FAIRCHILD, LLC ("HH Fairchild") is a New Hampshire domestic limited liability corporation, organized and existing under the laws of the State of New Hampshire.  HH Fairchild's principal office is located at 95 Market Street, Manchester, NH 03101 and its mailing address is P.O. Box 65, Manchester, NH 03101.

5.    Defendant SAMUEL WILSON FAIRCHILD ("SWF") is a member and manager of HH Fairchild and a citizen of the state of Florida.

6.    Defendant SAMUEL B. FAIRCHILD ("SBF") is the son of Samuel Wilson Fairchild and a member of HH Fairchild and SBF is a citizen of the state of New Jersey.

7.    To Plaintiff's knowledge, SWF and SBF are the sole members of HH Fairchild  and there are no other members.

## Factual Allegations Common to All Claims for Relief

8.    Plaintiff Zeng is an accomplished businessman with a track record of successful commercial ventures and an extensive network of professional relationships, within New York State and internationally.  By 2020, his expertise in navigating complex global business landscapes had positioned him to be a key player in the procurement and distribution of PPE.

9.    Defendant HH Fairchild, under the direction and control of Defendants SWF and SBF (collectively "the Fairchilds"), markets itself as a specialist in leveraging long-

standing commercial and strategic trust relationships in mainland China and elsewhere to support important procurement needs for governments, hospitals, companies, and other organizations in the United States, Europe, and Latin America, with a particular focus on the manufacture and distribution of healthcare-related materials and equipment.

10.    Zeng and the Fairchilds had a very close relationship, both personally and professionally.  At the time of the events set forth in this Complaint, Zeng and SWF had been friends and business connections for more than twenty years.  Zeng and SWF were more than cordial business acquaintances; they had developed a personal bond characterized by mutual respect, trust, and a shared understanding of equitable business practices.

11.    When the COVID Pandemic hit the United States in 2020, the demand for PPE in healthcare settings and elsewhere skyrocketed to unprecedented levels, especially in New York City and other cities that were among the first and hardest hit in the pandemic's early days, before COVID protocols, treatments, and vaccines were available or widely adopted.

12.    Zeng and the Fairchilds immediately discerned the developing and overwhelming need for PPE in New York City and elsewhere in the United States.  They also knew that, due to their particular business networks, skill sets, and areas of expertise, they were uniquely and ideally suited to source, procure, sell, and distribute the necessary PPE, including masks, gowns, and gloves, to those locations and settings where it was most crucially needed.

13.    Zeng and Defendants decided to partner in a joint business venture to identify entities in need of PPE in New York City and elsewhere in the United States and to source, procure, and ultimately sell and distribute the needed PPE to those entities.  Obviously, such a business venture could, potentially, prove very profitable.  However, for Zeng, the

3

opportunity to help communities in need in the New York and the United States, where he had lived and worked for many years and still had many dear friends and colleagues, provided an even deeper motivation.

14.    In March 2020, Zeng and Defendants entered into an agreement to engage Zeng to pursue, negotiate, and secure contracts to ship PPE products from various manufacturers located in mainland China to HH Fairchild for sale and distribution to U.S. entities and corporations, including the City of New York and other New York-based buyers (the "Agreement").  Under the Agreement, Zeng and Defendants would split the profits from each PPE transaction they worked on together equally; that is, Zeng would be entitled to fifty percent of the profits from each contract, and HH Fairchild would be entitled to the other fifty percent.

15.    In New York City, the COVID crisis was intensifying  rapidly, with an unnerving and foreboding increase in the numbers of infected, hospitalized, and dead each day. The demand for PPE was rapidly outstripping supply.  The spread of COVID had rapidly escalated from an outbreak to a full-on public health emergency that had already engulfed New York City and threatened to ravage the rest of the country, with alarming implications not only for health and safety but also for the economy and social structure.  Thus, it was critical that Zeng and Defendants get to work immediately.

16.    In such an emergency, there was no time for Zeng and Defendants to negotiate a written agreement.  The March 2020 Agreement between Zeng and Defendants regarding the equal split of profits between Zeng and HH Fairchild was an oral agreement. Zeng had no worries or misgivings about the oral nature of his contract with HH Fairchild

4

because SWF was a trusted friend, whom he believed to be an honorable and ethical businessman, and he had known the Fairchilds for over two decades.

17.     Notwithstanding the oral nature of the Agreement between Zeng and HH Fairchild, the terms of that Agreement, including the provision that Zeng would receive 50% of the profits from each transaction, were and are evident and manifest in the conduct of the parties and in written communications between the parties, including in WeChat messages and emails in which Zeng's work to secure contracts for PPE was discussed and acknowledged and in which a distribution of profits to him was contemplated.  Zeng and the Fairchilds engaged in extensive communications, through digital messaging and emails, that clearly established an understanding to share profits derived from their joint business endeavors per the terms of the Agreement**.**

18.     This understanding was further affirmed during a conversation regarding one transaction, wherein SBF explicitly acknowledged a "fifty-fifty" profit-sharing agreement between Zeng and HH Fairchild. In email and WeChat communications, Zeng and the Fairchilds repeatedly referred to one another as "partners" in their joint endeavor to procure and distribute PPE.

19.     For instance, on April 29, 2020, in a WeChat discussion about a potential transaction, SWF wrote to Zeng, "Thanks!!! I love being your partner!"  In another instance, on May 28, 2020, SBF wrote to Zeng in a WeChat discussion that included SWF, "We are a great team!  Looking forward to getting all details on this proposal and submitting."

20.     Pursuant to the Agreement, Zeng executed his responsibilities with diligence and skill, negotiating and finalizing contracts and transactions that not only met but exceeded expectations in terms of quality, compliance, and timely delivery.  Further, Zeng's

5

role was vital in properly securing the logistics, all required compliance under applicable law and quality control and as such, his services were crucial to the operational success of the agreement and partnership between the parties herein.

21.    In his work with HH Fairchild pursuant to the Agreement, Zeng sourced the PPE, identified manufactures and suppliers, negotiated prices and terms of delivery, procured and guaranteed the quality of the PPE products, ensured compliance with international regulations, managed import/export logistics, procured certificates for the exportation of medical products, and oversaw delivery of payment and of the PPE products themselves. Under the circumstances, and given the time pressures, fulfilling the above duties constituted an urgent, all-consuming affair for Zeng.

22.    The largest and most profitable of the transactions Zeng worked on with and for Defendants involved the procurement of surgical gowns and the sale of those gowns to the City of New York.  On behalf of HH Fairchild, Zeng negotiated the terms and conditions of several consummated transactions between April 2020 and August 2020, including a contract for the procurement of ten million surgical gowns to be sold and delivered to the City of New York.  For this specific transaction, Zeng secured the procurement of the surgical gowns at a cost price of $3.50 USD per unit and negotiated a sale to the City of New York at a sales price of $4.33 USD per unit. (The details of this transaction are provided more fully in paragraph 22(B), below.)

23.    Pursuant to the Agreement, Zeng negotiated four major transactions, including the transaction detailed in paragraph 20, above, that resulted in profits for HH Fairchild of approximately $15,000,000 USD, as well as two smaller transactions that resulted in profits between $600,000 and $1,000,000 USD.

24.    The details of the four major transactions are given below:

A) **<u>Transaction One:</u>**  Purchase order approved by SWF on April 21, 2020 from vendor Song Zhiniu with company Zhonghong Pulin Medical at Guangdong Jiaying Pharma Co., Ltd. at B Zone Dongsheng Industrial Park, Meizhou City, Guandong, China, shipped to HH Fairchild Holdings, LLC FOB Shandong Province with P.O. number 1002 for forty million FDA and CE certified nitrile medical gloves at 0.06 unit price for a total price of $2,400,000 USD.  Cost price per box of 100 gloves was $100.00 USD and the sale price was $108.25 USD.  Defendants realized a profit of $33,000.00 USD from this transaction, of which Zeng was entitled to $16,500.00 USD per the Agreement.

B) **<u>Transaction Two:</u>**  On behalf of HH Fairchild, Zeng negotiated the terms and conditions of a transaction between INTCO and HH Fairchild on or about May 11, 2020.  Zeng procured a contract for ten million surgical gowns that were purchased by HH Fairchild at a cost price of $3.50 USD per gown and subsequently sold to the City of New York at a price of $4.33 USD per gown.  Defendants realized a profit of $8,300,000 USD from this transaction, of which Zeng was entitled to $4,150,000 USD per the Agreement.

C) **<u>Transaction Three:</u>**  On behalf of HH Fairchild, Zeng negotiated the terms and conditions of a transaction between INTCO and HH Fairchild on or about May 11, 2020, for the procurement of two hundred million nitrile patient examination gloves (100 gloves to a box, 10 boxes to a case) that

were sold to HH Fairchild at a cost price of $0.095 USD per unit.  HH Fairchild, upon information and belief, sold the nitrile gloves at a unit price of $0.1235 per unit.  Upon information and belief, HH Fairchild realized a profit of $5,700,000 USD, of which Zeng was entitled to $2,850,000 USD per the Agreement.

D) **Transaction Four:** On behalf of HH Fairchild, Zeng negotiated the terms and conditions of a transaction between HH Fairchild and INTCO on August 12, 2020. Zeng procured a contract for forty thousand cartons of disposable nitrile gloves that were sold to HH Fairchild for a cost price of $125.00 USD per carton. HH Fairchild subsequently sold the disposable nitrile gloves at a sales price of $150.00 USD per carton, realizing a profit of $1,200,000 USD, of which Zeng was entitled to $600,000 USD per the Agreement.

25.     In addition to the four transactions detailed above, Zeng worked on the procurement and fulfillment of two smaller transactions through which HH Fairchild realized profits totaling between $600,000 and $1,000,000 USD, of which Zeng was entitled to a fifty percent share per the Agreement.

26.     The success of the above-described consummated transactions was due to the fusion of HH Fairchild's business infrastructure with Zeng's business acumen and extensive business network in China.  Zeng's contributions were essential to the consummation of these transactions.  HH Fairchild could not have sourced the PPE, procured it, negotiated the requisite contracts, imported the PPE, and sold it for distribution without Zeng's work.

27.     HH Fairchild realized total profits of approximately $16,000,000 USD from the above-transcribed transactions.  Absent Zeng's efforts, HH Fairchild would not have

realized these profits.  Per the Agreement, Zeng was entitled to fifty percent of these profits as compensation for his contributions to the transactions, in an amount of approximately $8,000,000 USD.

28.    Nonetheless, HH Fairchild failed to meet its obligations under the Agreement.  Despite Zeng's invaluable contributions and fulfillment of his obligations under the Agreement, Defendants never paid Zeng the fifty percent of the profits to which he was and is entitled.

29.    The failure of Defendants to compensate Zeng in accordance with the Agreement constitutes a breach of the parties' contract and an unjust enrichment of the Defendants at Zeng's expense, compelling him to seek redress through this action.

30.    Due to Defendants' breach and their failure to equitably compensate Zeng for his work on their behalf, Zeng has suffered damages in an amount equal to one-half of the profits HH Fairchild realized from the successful transactions detailed above, approximately $8,000,000 USD.

## FIRST CLAIM FOR RELIEF
### (Breach of Express Contract)

31.    Plaintiff repeats and realleges each allegation contained in paragraphs "1" through "30" of this complaint as if fully set forth at length herein as paragraph "31" hereof.

32.    In March 2020, the parties entered into an oral contract, i.e., the Agreement, pursuant to which Plaintiff would use his business skills, acumen, and connections to source PPE and negotiate contracts on behalf of HH Fairchild for the procurement and sale of PPE to the City of New York and other New York and U.S.-based entities and organizations.

9

33.     In exchange for Plaintiff's performance under the Agreement, Defendants agreed to distribute to Plaintiff fifty percent, or one-half, of the profits HH Fairchild realized from the transactions that were negotiated and facilitated by Plaintiff.

34.     Plaintiff fully performed his obligations under the Agreement, resulting in profits to HH Fairchild of at least $16,000,000 USD.

35.     Notwithstanding Plaintiff's full performance of his obligations, Defendants breached the Agreement by failing to pay Plaintiff his fifty-percent share of the profits realized from the transactions that Plaintiff negotiated.

36.     As a direct and proximate result of Defendants' breach of the Agreement, Plaintiff suffered damages in an amount to be determined at trial but in no event less than $8,000,000 USD.

37.     Plaintiff is entitled to recover his damages resulting from Defendants' breach of express contract from Defendants, in an amount to be determined at trial but in no event less than $8,000,000 USD.

## SECOND CLAIM FOR RELIEF
### (Breach of Implied Contract)

38.     Plaintiff repeats and realleges each allegation contained in paragraphs "1" through "37" of this complaint as if fully set forth at length herein as paragraph "38" hereof.

39.     Even the oral Agreement entered into by Plaintiff and Defendants does not meet the legal requirement for an express contract, the conduct of the Plaintiff and Defendants, and the written communications between Plaintiff and Defendants, evidence the existence of an implied contract.

40.     Pursuant to this implied contract, the parties agreed that, in exchange for using his business skills, acumen, and connections to source PPE and negotiate contracts on behalf of HH Fairchild for the procurement and sale of PPE to the City of New York and other New York and U.S.-based entities and organizations, Plaintiff would receive half of the profits realized by Defendants from the transactions Plaintiff facilitated and negotiated.

41.     The parties' conduct and their written communications evidence a mutual assent to the terms of the implied contract set forth above and an intent to promise that they would perform in accordance with the terms of the implied contract set forth above.

42.     Plaintiff fully performed his obligations under the implied contract, resulting in profits to HH Fairchild of at least $16,000,000 USD.

43.     Notwithstanding Plaintiff's full performance of his obligations, Defendants breached the implied agreement by failing to pay him his fifty-percent share of the profits realized from the transactions that Plaintiff facilitated and negotiated.

44.     As a direct and proximate result of Defendants' breach of the implied contract, Plaintiff suffered damages in an amount to be determined at trial but in no event less than $8,000,000 USD.

45.     Plaintiff is entitled to recover his damages resulting from Defendants' breach of implied contract, in an amount to be determined at trial but in no event less than $8,000,000 USD, from Defendants.

## THIRD CLAIM FOR RELIEF
### (Quantum Meruit)

46.     Plaintiff repeats and realleges each allegation contained in paragraphs "1" through  "45"of this complaint as if fully set forth at length herein as paragraph "46" hereof.

11

47.    Plaintiff provided valuable services to Defendants by leveraging his expertise and connections to secure contracts for the procurement and sale of PPE to the City of New York and other New York and U.S.-based entities during the critical period of the COVID pandemic.

48.    The services provided by Plaintiff included, but were not limited to, negotiating with suppliers, ensuring compliance with legal and regulatory standards, managing logistics for the delivery of PPE, and facilitating transactions that were beneficial to Defendants, including significant sales to the City of New York.

49.    Defendants accepted and benefitted from the services provided by Plaintiff, as evidenced by their successful acquisition and resale of PPE, from which Defendants realized profits in an amount no less than $16,000,000 USD.

50.    Plaintiff performed these services in good faith, with a reasonable expectation of compensation for his efforts, as evidenced by the understanding and assurances contained in written communications between Plaintiff and Defendants regarding the sharing of profits realized from their joint business endeavors.

51.    Despite the benefits conferred upon Defendants through Plaintiff's services, and Plaintiff's reasonable expectation of compensation, Defendants have failed to compensate Plaintiff for the value of the services he rendered to Defendant for their benefit.

52.    As a direct and proximate result of Defendants' failure to compensate Plaintiff for the services he rendered to Defendants, Plaintiff has suffered damages in an amount not less than $8,000,000 USD, representing the reasonable value of his services.

53.    Plaintiff is entitled to recover damages from Defendants in an amount not less than $8,000,000 USD, representing the reasonable value of his services.

12

**FOURTH CLAIM FOR RELIEF**
**(Unjust Enrichment)**

54.     Plaintiff repeats and realleges each allegation contained in paragraphs "1" through "53" of this complaint as if fully set forth at length herein as paragraph "54" hereof.

55.     Plaintiff provided services to Defendants by negotiating and facilitating contracts for PPE.

56.     Defendants were enriched through Plaintiff's services in negotiating and facilitating contracts for PPE in an amount of at least $16,000,000 USD in realized profits from the sale of PPE to the City of New York and other New York and U.S.-based entities.

57.     By accepting Plaintiff's services without compensating him for those services by paying him the fifty percent of the profits to which he was entitled, Defendants were unjustly enriched.

58.     It would offend equity and good conscience to permit Defendants to retain the fifty percent of the profits realized through the contracts for PPE that Plaintiff negotiated and facilitated.

59.     Plaintiff is entitled to recover from Defendants in an amount not less than $8,000,000 USD, representing the amount in which Defendants have been unjustly enriched at Plaintiff's expense.

**FIFTH CLAIM FOR RELIEF**
**(Promissory Estoppel)**

60.     Plaintiff repeats and realleges each allegation contained in paragraphs "1" through "59" of this complaint as if fully set forth at length herein as paragraph "60" hereof.

13

61.     Defendants made clear and unambiguous promises to Plaintiff that they would share with him the profits they derived from the transactions for the sale of PPE to the City of New York and other New York and U.S.-based entities that Plaintiff negotiated and facilitated.

62.     Defendants made clear and unambiguous promises to Plaintiff that they would share the above-mentioned profits with Plaintiff on a fifty-fifty basis, meaning that Plaintiff would receive fifty percent of the total profits.

63.     Plaintiff reasonably relied on these promises by Defendants, which were made both explicitly and implicitly, through their conduct and communications, including emails and WeChat messages, and by virtue of the personal trust and business relationship established between the parties over the course of more than twenty years.

64.     In reliance on the promises made by Defendants, Plaintiff undertook significant efforts and devoted substantial time and resources to secure contracts, negotiate terms, and ensure the procurement, international shipment, and delivery of PPE, actions that were reasonable and foreseeable given the nature of the promises made by Defendants.

65.     Defendants were aware of and fostered Plaintiff's reliance on their promises, as it was essential to the achievement of the Defendants' goal of profiting from the heightened demand for PPE during the pandemic.

66.     Despite Plaintiff's reasonable reliance on Defendants' promises and his performance in furtherance of their mutual business endeavors, Defendants failed to share the profits as promised, thereby breaching their promises to Plaintiff.

67.     As a direct and proximate result of Defendants' breach of their promises to Plaintiff, Plaintiff has suffered significant financial injury, in that he has not received his

14

rightful share of the profits from the PPE transactions, resulting in damages to Plaintiff in an amount to be determined at trial but not less than $8,000,000 USD.

68.     Plaintiff is entitled to recover from Defendants the damages he has suffered as a result of relying on Defendants' promises, which they subsequently breached, in an amount to be determined at trial but in no event less than $8,000,000 USD.

WHEREFORE Plaintiff demands judgment against Defendants in an amount to be determined by the factfinder at trial, but in no event less than the sum of $8,000,000, together with applicable prejudgment interest, the attorney's fees and costs of this action, and such other and further relief as the Court may deem just and proper in the circumstances.

Dated:   New York, New York
        February 27, 2026

LAW OFFICE OF BONNIE H. WALKER PLLC

By: /s/   _____
    Bonnie H. Walker, Esq.
    William J. Rita, Esq. Of Counsel
110 Seaman Avenue, #9H
New York, New York 10034
(646) 284-7230
Bonnie.walker@bhwlegal.net
Nycbanklaw@aol.com

*Attorneys for Plaintiff*

15